Good morning. May it please the Court, I'm Beatrice Witten, here for the plaintiff, Brian Edward Reid. At the heart of Mr. Reid's appeal is the Commissioner's failure to base her decision in this case on the entire medical record before her. This means that the decision could not be supported by substantial evidence, and it created errors throughout the entire five-step sequential evaluation process. Mr. Reid's medical history includes, in 2003, a two-level cervical fusion surgery. After that surgery, he returned to work as a painter. In June of 2004, he fell 20 feet from a roof onto concrete, fracturing his spine in multiple places and fracturing the connection between his hip and his pelvis. So the record of that injury and his subsequent treatment over the next couple of years is vitally important to deciding whether or not he was disabled. And this is where the Commissioner did not fulfill her duty. The first ALJ decision in 2009, ALJ Vogel erroneously applied res judicata to that important period of time, claiming wrongfully that an earlier application by Mr. Reid from 2006 created a res judicata issue. That was such an obvious and patent error that the Appeals Council remanded it, pointing out that there had never been any medical development on that earlier claim. So it was not possible for that evidence to be considered as res judicata because it had never come into the case at all. So the case was remanded for the ALJ to correct that and other errors. However, in 2011, the ALJ essentially reissued the same decision. He touched upon some of the medical evidence during that period of time. He essentially made only three or four mentions of it. He never discusses Mr. Reid's prior surgery. He never discusses the fall. He never discusses all the treatment after the fall and the multiple spinal fractures. He doesn't discuss Mr. Reid's 2005 subsequent lumbar fusion surgery. He basically starts in 2007 and focuses on Mr. Reid's improvement, and admittedly, he improved. But the question is, from what? The ALJ says his condition improved, but he says from what, or what was the improvement? And without focusing on that, and I would point out also, Your Honors, that this was for not only disability but also for a period of disability. So it may have been possible that Mr. Reid improved and he would have been eligible for payment for that period of time when he was disabled. This was never appropriately considered. Without discussion of conflicting evidence, this court cannot affect to conduct a review of this decision. The government has defended this decision by claiming, first of all, that the ALJ did. I'm looking at the opinion here, and I think it's the ALJ says that the claimant has a history of thoracic and lumbar fusion treatment. It notes from the relevant period document that claimant's responding well to treatment with minimal complaints. And then it says the underside has also considered his history of spinal fusion and led him to work involving no more infrequent overhead reaching. And the reports seem to support that, that he was doing well. If you look at the medical reports, it parrots that and basically said he's doing well in his recovery and treatment following the fusions. And it seems to me there's nothing much more that you could say after that. He recognizes that he had that and that he's received treatment. There's nothing. You don't have to cover every single day of positive reports from the treatment. He just has to indicate that he did consider that. If there was anything left over from it, it adds to the overall picture. But it sounds to me like he was considered to have had a fusion. But he didn't, Your Honor. He says that he does. But what he does is— Do we say he's a liar? Your Honor, there's a great deal of medical evidence that is left not discussed in this decision. And what you cited is what this ALJ typically did in this decision, is that he would pick out an instance in the record when Mr. Reed had some positive findings or he had a good day. In fact, in one of those citations that you note, he sets out that with Dr. Kalema, that there were some normal findings. But in fact, in that particular visit to Dr. Kalema, there were all kinds of abnormal findings. And the ALJ ignores all of those and focuses on the one portion that sets out a finding that would be unfavorable to Mr. Reed. That does not comport with substantial evidence. An ALJ is not allowed to simply pick out bits of the record that support a decision of non-disability and ignore the rest. And the point would be, even if Mr. Reed did improve, which certainly he did. I mean, his spine was fractured in four places. So he certainly improved from that. But if there were a period of disability that lasted 365 days or more, Mr. Reed was entitled to disability. So there may have been a period in there that simply was not considered. And simply saying that I've considered the entire record without discussion of important facts does not comport with substantial evidence. The government has claimed that this failure to discuss the entire record is harmless error. This court has not specifically reviewed in great detail whether the harmless error doctrine applies to social security disability cases as discussed in the Supreme Court case of Shinseki v. Sanders. It has been mentioned, but only in brief unpublished decisions in this circuit. However, three other circuits have looked at that question and have applied the harmless error doctrine. I would submit that this is not harmless error, and that if you look at what the other three circuits, your sister circuits, the Ninth, Seventh, and Sixth, have said about this question, they've basically said that if circumstances show that there's a substantial likelihood of prejudice because evidence was not considered, that this cannot be harmless error. And I would like to quote from the Seventh Circuit in the 2011 Walters case, an error in failing to analyze and explain important evidence is not harmless, simply because the ALJ could have addressed that evidence in a way that would survive substantial evidence review. And that is exactly what we have here. If the ALJ had sufficiently talked about this evidence, discussed it, weighed it, and considered it as he was supposed to do, in a way that you could track his logic and understand how he weighed the evidence, then I might not have an issue and I might not have an argument. But he didn't, and I do. That is all, unless your Honors have additional questions. Okay. I think we understand your argument a little bit, and let's hear from Ms. Berry. Good morning, Your Honors. May it please the Court, my name is Sarah Berry, and I'm here representing the Commissioner of Social Security. As in any Social Security case, the fundamental question here is whether the Court can look at the agency's decision that was rendered and find that it rests on substantial evidence and conforms to the applicable legal standards. In this case, despite what Reed's Counsel appears to be focusing in this oral argument, the main focus of this appeal I submit, based on the briefs, has to do with whether the agency showed that Reed's impairments were considered sufficiently in combination. And that's the main issue that's been raised today. Was the reasoning that was set forth in the agency... In the brief, she raised two issues mainly. One is, on remand, did the administrative law judge sufficiently consider the records from the 2004-2006 period? And second, did the judge consider the combination of impairments sufficiently? You can address the second, but I think the appellant did raise the other issue too. Yes, Your Honor. I did not mean to imply that she didn't raise it. I do think she raised both issues in her brief. I submit, based on reading her reply brief, the focus appeared to be more on the combination of impairments issue, but she did raise the 2004-2006 issue in her brief. With regard to that issue, I would like to highlight what Your Honor said and submit that the ALJ did sufficiently consider that evidence from 2004-2006 in his decision. I think that Reed's counsel is trying to hold the agency to what would amount to an impossible standard requiring the agency to exhaustively detail in an extraordinarily long decision. I don't see how it could work out any other way. Every medical record that was submitted apparently addressed every single one in the decision. I don't think that's a reasonable standard. I would submit that the language that Your Honor highlighted, as well as elsewhere in the decision where the ALJ talks about Mr. Reed's improvement, talks about the fact that he was significantly injured. There's no dispute about that. He was significantly injured, and the ALJ sufficiently took that into account in making his finding that he couldn't perform past work as a painter. There's no dispute about that. Instead, what the ALJ did was he considered all the evidence, sufficiently noted in the decision that he considered all of the evidence by noting that he considered all of Mr. Reed's symptoms, by noting that he considered the entire record, by highlighting certain key pieces of evidence from the time period that Reed's counsel is focusing on. The ALJ also explained, as I recall, why he didn't credit certain pieces of evidence, such as when he found that testimony wasn't supported by medical data. So he not only explained what he did rely on, he explained why he didn't rely on certain things. Yes, I agree. And I submit that based on the standard of review that this court is facing with these types of cases, that that's sufficient. The court comes to this decision and looks at whether the agency did enough. Did the agency conform with applicable regulations? Did the agency sufficiently consider the evidence that the claimant submitted? And did the ALJ give a sufficient explanation of the evidence that was considered in the decision such that this court can follow the path and follow the reasoning of what the ALJ did and be satisfied that what the agency has done here was supportable? I think the answer for all of these reasons with this particular decision is yes. Reed's counsel mentioned in particular the concept of a period of closed disability. Not raised in the appellant's brief, but it's fairly before the court if we're looking at this limited 2004 to 2006 time period. I would point out that under agency regulations, the application that is currently before the court was submitted in December 2006, and at most the claimant would be able to go back a previous 12 months to have that period of time considered. So to the extent that Reed's counsel is arguing that the ALJ should have further considered evidence from 2004 up to December 2005, I would submit that that's only relevant to the extent that the issue before the court would at most be considering December 2005 forward. I would also submit that it remains the claimant's burden to prove that he was, in fact, disabled during the time period. That burden's on the claimant and he hasn't met it here. There has been certain evidence that's been highlighted in the briefs that was mentioned here this morning that talks about the fact that he had some significant setbacks, that he was unquestionably injured, but there's also significant evidence in the record that counteracts that, and that's what the ALJ focused on in rendering his decision. He made significant improvement. He had surgery that was successful. He received injections for his spinal injuries that he consistently reported, gave him great relief. He found relief through medication, and he was able to increasingly engage in more and more activities. And I submit that even if he might have been significantly injured for a limited period of time, he has not met the threshold mark even for a closed period because he'd have to be disabled for 12 continuous months. He has not shown that here. He has not met his burden on that issue. I'd like to shift now to this issue of a combination of impairments because I think that's what we're discussing here today. Plaintiff's counsel, excuse me, Ms. Reed's counsel argues that there is a standard that has been set forth by the sports circuit in the case of Walker versus Bowen that requires the agency to explicitly articulate and sufficiently consider a claimant's combination of impairments. There's no disagreement that agency regulations require a claimant's combination of impairments to be considered. It's set forth in the Social Security Act. It's set forth in 20 CFR 404-1523 that discusses the fact that the agency needs to consider those impairments in combination as it goes through the sequential evaluation process as it evaluates whether a person is in fact disabled under the act. But I submit that in this case this decision is a good example of how the agency has sufficiently done that. Many of the cases Walker cites to a number of other four circuit cases that talk about the fact that yes, the agency needs to discuss that because it's part of the act and it's part of its regulations. But the ALJ has done that here. Most specifically at step three where you're considering whether or not a claimant either meets or equals a listed impairment, which is a very specific and exacting requirement under the act. The claimant must prove that he is, if he doesn't meet the exacting criteria set forth under a listed impairment, well then he must prove that he equals that same exacting listed criteria. And as part of that consideration, the agency must consider whether his combination of impairments might in fact meet that exacting standard. Well, here the ALJ specifically said as one of his findings that he made, that he considered the impairments in combination and that they did not meet or equal listing. Well, I think we need to take that at face value particularly when as part of his decision, he has an entire paragraph in his decision where he goes through and he highlights the fact that he considered all of the impairments. He considered claimant's degenerative disc disease, particularly after his significant fall. He considered his affective disorder. He considered his obesity, which might well work in conjunction to create a more severe problem that should be considered by the agency. But the agency did consider it. There's an entire paragraph outlining how the ALJ considered the evidence and reasonably found that no, these impairments in combination did not in fact meet any of the listed impairments. Now, to the extent that combination of impairments needs to be considered throughout the agency's decision, there's no disagreement here. It needs to be considered at every step as the regulation states. However, the ALJ also did that here. At the next step, at the residual functional capacity stage of the process, he states that he considers all of the claimant's symptoms. He states that he looked through the entire record and then he outlines and again highlights each one of these impairments as he goes through his discussion and explains why he either adopted further limitations on the ability to work because of what he found in the evidence or as your honor mentioned, he discounts certain evidence but explains reasonably why he discounted the evidence. And so then when you look at the decision as a whole, can this court be satisfied that the agency sufficiently considered this issue, not only 2004 to 2006 evidence, but also the combination of impairments, we can say, yes, the agency did do that sufficiently. And I would specifically highlight the fact that at the end of the day, the ALJ found that claimant could not go back to his past work. He acknowledged he could not do what he used to be able to do and that's a specific acknowledgement of his injuries and the functional limitations that he sustained. He limited him to sedentary work. The appeals council affirmed that. Sedentary work is a significant limitation and the ALJ acknowledged that reasonably reflecting what the medical evidence of record reflects. And I think that finding reflects the fact that he considered all of the impairments that were at issue in this particular court has nothing further. That's all I have. Thank you. Ms. Whitten, would you like to be heard in reply? Very briefly, Your Honor. What the commissioner characterizes as treatment of key pieces of evidence is, as I've argued previously, merely isolating small sections of the record. This is an error that really creates all the other errors that we've complained of in this decision. It would be impossible for the ALJ to do an adequate combination of impairments analysis if he didn't consider all of the claimant's impairments, all of his symptoms. Actually, the ALJ provided a pretty detailed analysis of most of the impairments and the data on which he relied. The government suggests that it would, and I don't imagine you're arguing that it would have been necessary to list every symptom and every complaint. Certainly not, Your Honor. That would be unreasonable. I agree with that. There's a line for doing that. Of course, and for an ALJ to go through and discuss an entire medical record in the kind of detail that we do in these cases would be unreasonable, and I'm not arguing that. What condition do you say he didn't address or didn't recognize? Numerous symptoms, Your Honor, including, and this includes objective symptoms. There were multiple indications of numbness and loss of sensation. There was reflex loss. The ALJ never mentions it. There are entire exhibits which he doesn't even touch on, much less summarize. He doesn't mention them. He doesn't bring them in. But one of the biggest problems in this case was Mr. Reed's pain, and after what had happened to him, none of his doctors ever suggested this pain was anything less than genuine. So he had all those indications. He described a number of activities, though, that his pain did not seem to inhibit him from doing. He walked his dogs. He cared for his younger daughter. He cooked. He folded clothes. He worked in the yard. He cleaned the house. So apparently the ALJ may just have been impressed by the fact that his pain did not seem to be a limiting factor with respect to a number of typical day-to-day activities. Two things, Your Honor. First, most of the activities that the ALJ is discussing did happen during this later period. For some reason, he really takes the ALJ begins to discuss evidence beginning in 2007, and he ignores most of the limitations and activities before that time. I also submit that the ALJ's characterization of those types, natures, and frequencies of activities is exaggerated. Again, he does this thing of focusing on some part of the record that he can cite to underline a finding of non-disability and leaves out all kinds of other limitations and problems. For example, in some of the things you just mentioned, Mr. Reed was able to do those only infrequently and intermittently. He did not care for his daughter. His 12-year-old daughter visited him on the week and took care of him. He was very embarrassed about that. His so-called gardening consisted of sitting in the yard, watching his roommate take care of the garden, and perhaps picking leaves off some house plants. It looks to me like he's looked at that. He says that the hearing the claimant testified he suffered from depression, psychological problems he could not work, suffered from chronic pain, felt worthless, also stated he was unable to take care of his daughter, could do much of anything. He indicated that he suffered from severe depression, suicidal ideation, and social withdrawal. I think he covered as much as you could cover. I respectfully disagree, Your Honor. Okay. And I think if you compare what we've set out in the record. His legs would become numb and weak. You said he didn't refer to that. He did. But he chooses not to believe any of those things. And he did exactly what Judge Duncan noted. He construed that against what the man was able to do and how he was doing it, made factual findings in that regard. But I don't think it's fair to charge him with not having considered these matters. Now you can say you disagree. That's another question. But it looks like his consideration was fairly complete. I think if you review the entire record, Your Honor, you'll find that it was not. Well, that's what I asked you to tell me. I have looked at the record fairly completely, and I'm interested in hearing what you think he did not discuss or recognize. And you said numbness and pain, and I've just read to you portions where he talked about both. If I have permission to answer the question, Your Honor, he did find Mr. Reed's testimony on these issues not credible. And one of the reasons he found it not credible is he said it wasn't supported by medical evidence. But the ALJ did not discuss, evaluate, and consider the medical evidence that supported those complaints, which, as I said, in several medical visits, he was missing reflexes. He had numbness. The doctors, as I said, never doubted that his pain was genuine, and despite having some good days and some better days he had, sometimes when medication was helping him, the overall picture, which is what the ALJ was supposed to consider, is a man with severe disability. Thank you. All right, we'll come down to Greek Council and then take a short break. We have to wait. Senator McCord, we'll take a brief recess.
judges: William B. Traxler, Jr., Paul V. Niemeyer, Allyson K. Duncan